UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ERICA CATTY and CHARLES CATTY,**
individually, and on behalf of others similarly        Case No.
situated,

      Plaintiffs,

**vs.**

**NEW YORK LIFE INSURANCE
COMPANY**, a New York Corporation,

      Defendant.

---

**COLLECTIVE AND CLASS ACTION
COMPLAINT AND JURY DEMAND**

     Plaintiffs, ERICA CATTY, and CHARLES CATTY ("Plaintiffs"), individually and on

behalf of all others similarly situated, by and through their attorneys, hereby bring this

Class/Collective Action Complaint against Defendant NEW YORK LIFE COMPANY, and state

as follows:

**INTRODUCTION**

     1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and

Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, *et seq.*, and for common law claims of breach of contract or (in the

alternative) unjust enrichment.

     2.    Defendant New York Life Insurance Company ("Defendant") is the nation's largest

mutual life insurance company.[1] As part of its business operations, Defendant maintains a Group

Benefits Solutions ("GBS") team that manages life, accident and disability insurance for

---

[1] *See*, https://www.newyorklife.com/about (last visited on 9/20/24).

employers across the country. GBS serves approximately 9 million customers[2]. To support its GBS team operations, Defendant maintains a contact center through which it employs remote and brick and mortar hourly customer service representatives throughout the United States. These hourly employees, hereinafter collectively referred to as Customer Service Representatives (or "CSRs"), have a variety of job titles, including "Customer Care Advocate," "Customer Service Advocate," and "Claims Intake Representative." However, the material aspects of the employment, duties, the applicable policies, and the wage and hour violations complained of herein are the same for all CSRs.

3.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

4.     One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

5.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

---

[2] *See,* https://www.fineos.com/clients/new-york-life-group-benefit-solutions/ (last accessed 9/20/24)

6.      Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

7.      Defendant requires its CSRs to perform compensable work tasks off-the-clock before their scheduled shifts and during their unpaid meal periods.

8.      This policy results in CSRs not being paid for all time worked, including overtime.

9.       In the course of performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and a phone system.

10.      The time CSRs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

11.      Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone system.

12.      Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

13.      Plaintiffs seek to represent in this action all current and former CSRs who are similarly situated to each other in terms of their positions, material job duties, pay structure and Defendant's violations of federal and state law.

14.      Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

15.      Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

16.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

17.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

18.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

19.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

20.     This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

21.      Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

22.     Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

23.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

24.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

25.     This Court has personal jurisdiction over Defendant because it is a New York mutual insurance company organized and existing under the laws of New York, is headquartered in the state of New York, conducts business within the state of New York, has its principal place of business in the state of New York and employs individuals within the state of New York.

26.     This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of New York, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## **VENUE**

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## **PARTIES**

28.     Plaintiff ERICA CATTY ("Plaintiff E. Catty") is a Texas resident who has worked for Defendant as a remote CSR in Texas within the last two years.

29.     Defendant paid Plaintiff E. Catty for her services in the form of an hourly wage, for

all credited hours worked, most recently at the rate of $20.14 per hour.

30.     Plaintiff E. Catty signed a consent to join this collective action lawsuit. **Exhibit 1**, E. Catty Consent to Join.

31.     Plaintiff CHARLES CATTY ("Plaintiff C. Catty") is a Texas resident who worked for Defendant as a remote CSR in Texas within the last three years.

32.     Defendant paid Plaintiff C. Catty for his services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $19.00 per hour.

33.     Plaintiff C. Catty signed a consent to join this collective action lawsuit. **Exhibit 2**, C. Catty Consent to Join.

34.     Defendant is a mutual insurance company organized and existing under the laws of the state of New York with its principal place of business at 51 Madison Avenue, New York, New York 10010. Defendant is duly authorized to do business in the state of New York.

## GENERAL ALLEGATIONS

35.      Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices in Texas within the last three (3) years.

36.     Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call is documented and accounted for in Defendant's system; and (d) logging out of the computer software programs and applications and the phones and shutting down their computers.

37.     Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days

each week, and up to forty (40) hours or more in a workweek.

38.     These schedules result in CSRs routinely working overtime on a weekly basis.

39.     Indeed, throughout their employment with Defendant, Plaintiffs worked a substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

40.     At all relevant times, Defendant controlled their CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

41.     Defendant was also responsible for training and continuing their CSRs' education in their role as CSRs.

42.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone system.

43.     These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

44.     Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

45.     Defendant expressly instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they begin they taking and making phone calls.

46.     CSRs, including Plaintiffs, are instructed to only include the time that they are fully prepared to field calls in their hours worked each shift.

47.     Defendant furthermore enforces their policy of requiring all computer networks, programs and applications be open and ready at the commencement of a CSR's shift, and critically, before the clock in, through their performance metrics.

48.     More specifically, being clocked in but unavailable to take calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

49.     Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries.

50.     This performance metric necessarily requires that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the call.

51.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

52.     Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

53.     Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

54.     In fact, as outlined below, Defendant maintain a common plan and policy pursuant to which they fail to pay their CSRs for no less than twelve (14) minutes per day of work performed during pre-shift time and during their lunch periods.

55.     This time could easily be recorded, accounted for and paid, but for Defendant's choice not to credit such time as time worked.

### A.      Pre-Shift Off-the-Clock Work

56.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

57.     Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

58.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging ten (13) to fifteen (15) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications.

59.     Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to open, login to and access numerous programs including, but not limited to: VDA/VPN, NYL Square, web browser, Microsoft SharePoint, Verint, Cisco Finesse, Microsoft Outlook, Microsoft Teams, and Microsoft Word, among others.

60.     The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls.

61.     Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

62.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than ten (13) minutes per day of work performed in connection with the above pre-shift activities.

**B.      Meal-Period Off-the-Clock Work**

63.     Defendant provides their CSRs with one (1) thirty (30) minute unpaid lunch break per shift.

64.     In reality, Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

65.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> **Bona fide meal periods**. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be _completely relieved_ from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

66.     Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

67.     CSRs spend approximately one (1) to two (2) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

68.     Defendant's management is aware that Plaintiffs and other CSRs' perform these tasks off the clock, and could have paid CSRs for this time, but did not.

**C.    Exemplary Pay-Period to Illustrate Pre-Shift,   and Meal-Period Compensation Deficiencies**

69.     An example of specific workweeks where Defendant failed to pay Plaintiff E. Catty all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of 05/06/2024 to 05/19/2024**

- Plaintiff E. Catty was paid at a rate of $20.14 per hour for the 80.00 regular hours and $30.91 per hour for the 0.83 overtime hours Defendant credited her as having worked.

- With unpaid pre-shift and meal-period time in a range of fourteen (14) to seventeen (17) minutes per shift, at five shifts per week, Plaintiff E. Catty should have been paid an additional seventy (70) to eighty-five (85) minutes at her overtime rate of $30.91 during the overtime workweek.

**Exhibit 3**, E. Catty Pay Stub.

70.    Plaintiff C. Catty similarly worked over forty hours or more per week.

71.    The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

### D.    Defendant Benefitted From the Uncompensated Off-the-Clock Work

72.    At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, and meal-period activities performed by CSRs.

73.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

74.    At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, and meal-period activities.

75.    Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

76.    At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

77.    At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, and meal-period off-the-clock work.

78.    Defendant expressly trained and instructed CSRs to perform the above-described

pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

79.    At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, and meal-period post-shift activities they performed.

80.    Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

81.    Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, and meal-period activities was compensable under the law.

82.    In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

83.    Despite knowing CSRs performed work before their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

84.    Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

85.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this

definition if necessary.

86.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

87.     Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

88.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

89.     Defendant assigned and/or were aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

90.     As part of their regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a.     Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

      b.     Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

91.     Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

92.     Defendant's unlawful conduct has been widespread, repeated and consistent.

93.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

94.    The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

95.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

96.    The key issues – the amount of uncompensated pre-shift start-up/log-in time, and the amount of unpaid meal period time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

97.    Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

98.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

99.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

100.    Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

101.    The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## <u>RULE 23 CLASS ACTION ALLEGATIONS</u>

102.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their

own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at any time*
> *during the three years preceding the filing of this Complaint up through*
> *and including judgment.*

(hereinafter referred to as the "Rule 23 Class").  Plaintiffs reserve the right to amend this definition

as necessary.

103.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class

members in this case would be impractical.  Plaintiffs reasonably estimate there are hundreds of

Rule 23 Class members.  Rule 23 Class members should be easy to identify from Defendant's

computer systems and electronic payroll and personnel records.

104.    There is a well-defined community of interest among Rule 23 members and

common questions of law and fact predominate in this action over any questions affecting

individual members of the Rule 23 Class. These common legal and factual questions, include, but

are not limited to, the following:

      a.    Whether the pre-shift time that Rule 23 Class members spend on
start-up/log-in activities prior to "clocking in" for each shift is
compensable time;

      b.    Whether the time that Rule 23 Class members spend on work
activities during their lunch break, such as logging back into
computer systems and clocking in is compensable time; and

      c.    Whether Defendant's failure to pay the Rule 23 Class members for
this pre- and mid-shift time at their agreed upon rate constitutes a
breach of contract and whether Defendant was unjustly enriched.

105.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other

Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's

common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

106.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

107.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

108.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

109.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

110.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as

a whole, class certification pursuant to Rule 23(b)(2) is also appropriate

**FIRST CAUSE OF ACTION**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201,** *et seq.*
**FAILURE TO PAY OVERTIME WAGES**

111.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

112.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

113.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

114.    Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

115.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

116.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

117.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than fourteen (14) to seventeen (17) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

118.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage,

including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

119.    Defendant's violations of the FLSA were knowing and willful.

120.    Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

121.    Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

122.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
### (Rule 23 Class Action)
### Breach of Contract

123.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

124.    This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

125.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on Defendant's behalf.

126.    Defendant's contractual promises to pay Plaintiffs and each Rule 23 Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Rule 23 Class members.

127.    Upon information and belief, each Rule 23 Class member, including Plaintiffs, has an hourly rate in excess of $15.00 per hour.

128.    Plaintiffs and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

129.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

130.    On occasion, CSRs missed time from work causing them to work under 40 hours in a given week.

131.    To the extent there is no other state law remedy available, Plaintiffs and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

132.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Rule 23 Class Action)**
**Unjust Enrichment**

133.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

134.    This Count is pled in the alternative to the Second Cause of Action, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

135.    This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

136.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed for the benefit of Defendant.

137.    Plaintiffs and every other Rule 23 Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

138.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

139.    Plaintiffs and the Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

140.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

141.    Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Class member to finance its various business ventures or pay its equity owners.

142.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Class for the same.

143.    Plaintiff and the Rule 23 Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable

manner.

144.    As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective and on behalf of the Rule 23 Class requests judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (First Cause of Action);

b.    Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust enrichment (Second and Third Causes of Action);

c.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and the Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d.    Designating Plaintiffs as the representatives of the FLSA collective action and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

e.    Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f.    Declaring Defendant's violation of the FLSA was willful;

g.    Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Class the full amount of damages and liquidated damages available by law;

h.    Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

i.    Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

j.    Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: October 7, 2024                    Respectfully Submitted,

**BROWN, LLC**

s/ Nicholas Conlon_____
Nicholas Conlon (NY Bar # 801616)
111 Town Square Place #400
Jersey City, New Jersey 07310
Phone: (877) 561-0000
Email: nicholasconlon@jtblawgroup.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*PVH Forthcoming*)
402 W. Liberty St.
Ann Arbor, MI 48178
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*PVH Forthcoming*)
126 S. Main St
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*